# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DON BOYDSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-444-G |
| | ) |
| MERCY HOSPITAL ARDMORE, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Doc. No. 16) filed jointly by Defendants Mercy Hospital Ardmore, Inc., Mercy Health Oklahoma Communities, Inc., and Mercy Health. Plaintiff Don Boydston has filed a Response (Doc. No. 20), to which Defendants have replied (Doc. No. 31). *See also* Defs.' Notice (Doc. No. 34). Based upon the parties' submissions and the relevant record, the Court grants Defendants' Motion.

### I. Background

In this action, Plaintiff brings claims of religious discrimination and retaliation in violation of Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, §§ 1101 et seq. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *See* Compl. (Doc. No. 1) at 1-2, 7-11. Pursuant to the Court's Order of June 26, 2018, the parties have conducted limited discovery on the issue of Defendants' collective status as a religious organization, and Defendants now seek summary judgment on

Plaintiff's Title VII and OADA claims on the basis of religious exemption. *See* Order of June 26, 2018 (Doc. No. 11) (DeGiusti, J.).

II.     *Summary Judgment Standard*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

The party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also* LCvR 56.1(c). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. Relevant Facts[1]

Plaintiff was employed by Defendant Mercy Hospital Ardmore, Inc., as a Power Plant Technician from November 2005 until his termination on December 9, 2016. Defs.' Statement of Material Facts ("SMF") ¶¶ 1, 4, 61 (Doc. No. 16, at 5-17). Defendant Mercy Hospital Ardmore, Inc., is a wholly owned subsidiary of Defendant Mercy Health Oklahoma Communities, Inc., which, in turn, is wholly owned by Defendant Mercy Health. SMF ¶ 24. Defendant Mercy Health, along with its subsidiaries, is recognized as a nonprofit, tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). SMF ¶ 24.

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

3

Defendant Mercy Health was founded by the Sisters of Mercy of the St. Louis Regional Community, a religious order of the Roman Catholic Church. SMF ¶¶ 9-10. The Sisters of Mercy have a sponsorship relationship with Defendants, pursuant to which members of the Sisters of Mercy provide various governance roles and functions, including positions on Mercy Health's Board of Directors. SMF ¶¶ 11-12. Mercy Health's Board of Directors is also the sponsoring Board for Mercy Health Ministry, which was founded by the Sisters of Mercy and granted pontifical public juridic personality[2] by the Vatican in 2008.[3] SMF ¶¶ 13-15, 31. Mercy Health's Bylaws stipulate that each Class A Director must be "a woman religious Sister of Mercy so long as there are Sisters willing, able and qualified to serve." SMF ¶¶ 19-20 (internal quotation marks omitted). At the time Defendants filed their Motion on August 31, 2018, all of Mercy Health's Class A Directors and some of their Class B Directors were religious nuns. SMF ¶ 21.

---

[2] Mercy Health Ministry's status as a public juridic personality means that it "operates in the name of the church, that its temporal goods are ecclesiastical goods, that it represents the church in the same sense that a diocese or religious congregation does, and that it becomes an entity enabling people to come together to perform a work or carry out its religious mission in a way that individuals could not do on their own." SMF ¶ 13.

[3] The Sisters of Mercy's Religious Governance Services Agreement, Doc. No. 16-3, at 19-24, reflects that the Sisters of Mercy have a sponsorship relationship with both Mercy Health and Mercy Health Ministry. *See id.* at 19; SMF ¶ 17. The relationship between Defendants and Mercy Health Ministry is further elucidated in Mercy Health's Articles of Incorporation and Bylaws, which reflect that Mercy Health's stated purpose is to serve the mission of Mercy Health Ministry. *See* Doc. No. 16-3, at 35 (Bylaws provision stating that Mercy Health's "general purpose" is "to extend the religious apostolate and the charitable services of Mercy Health Ministry"), 59 (Articles of Incorporation provision stating that Mercy Health "shall operate . . . to serve the mission of the Roman Catholic Church and Mercy Health Ministry, a pontifical public juridic person," and to evidence Mercy Health Ministry's policies).

4

Defendant Mercy Health's Articles of Incorporation and Bylaws both state that the entity is "organized exclusively for religious, charitable, scientific and educational purposes." SMF ¶¶ 22-23 (internal quotation marks omitted). Its Bylaws additionally set forth that its "specific purpose" is "to carry forward the healing ministry of Jesus in the Church through the management, ownership, or sponsorship of health care facilities, programs and services consistent with the teaching and laws of the Church regarding Catholic health services and with traditions, values and enduring concerns of the Sisters of Mercy," and to "adhere to and be guided by the Ethical and Religious Directives for Catholic Health Services of the National Conference of Catholic Bishops . . . and by the philosophy, mission, and traditions of the Sisters of Mercy." SMF ¶¶ 18, 39 (omission in original) (internal quotation marks omitted). The "Mercy" public website contains the following sectarian mission statement: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service. The Mission statement of Mercy is an inspiring reminder of our calling. It also unites and directs activities across our entire health and human services ministry." SMF ¶ 33 (internal quotation marks omitted). In addition to the values of justice, service, and excellence, Mercy's values, as listed on the public website, include: "Dignity[:] We cherish each person as created in the image of God"; and "Stewardship[:] We wisely use our talents and resources to strengthen Mercy as a ministry of the Church." SMF ¶ 34.

Mercy's "Co-worker Orientation Participant Guide" includes information for new employees regarding Mercy's Catholic history, heritage, mission, and values. SMF ¶ 35;

*see also id.* ¶¶ 44-46.[4] Employees are, to at least some degree, exposed to prayer at employee meetings. *Compare* SMF ¶ 48 ("Mercy co-workers are exposed to prayer on a regular basis, including at the beginning and end of meetings." (citing Bryson Decl. (Doc. No. 16-3) ¶ 49)), *with* Pl.'s Resp. at 7 (citing Pl.'s Admis. (Doc. No. 16-9) ¶ 5 (Plaintiff stating that he "recall[s] attending department meetings where prayer was sometimes included"). Mercy has designated spaces for private and communal worship, reflection, and prayer at its facilities. SMF ¶ 51.[5] Mercy's guidelines provide that the prayer chapels located in its facilities should be highly visible. SMF ¶ 52. Defendant Mercy Hospital Ardmore, Inc., displays religious symbols throughout its facility, including in patient rooms. These include crucifixes with the image of Jesus Christ, religious statues of the Virgin Mary, other religious art and story boards, and scriptural images and quotes. SMF ¶ 53.[6]

---

[4] Plaintiff objects that he was unaware of the mission statement and was not instructed to review it. Plaintiff does not, however, dispute the existence of the Co-worker Orientation Participant Guide, that the mission statement and values contained therein have a sectarian message, or that employees are generally exposed to the mission statement and values during orientation. *See* Pl.'s Resp. at 6, 10-11; Pl.'s Resp. Ex. 1 (Doc. No. 20-1) ("Pl.'s Decl.") ¶¶ 16, 24, 27.

[5] Plaintiff objects only that he was never advised of locations for prayer or worship at Mercy Hospital Ardmore, a contention that fails to raise a genuine dispute to Defendants' fact statement. *See* Pl.'s Resp. at 7. Relatedly, in Plaintiff's Statement of Facts, Plaintiff states that Defendant Mercy Hospital Ardmore, Inc., does not "have a dedicated church." *See id.* at 9 (citing Pl.'s Decl. ¶ 15). In their Reply, however, Defendants cite testimony that Mercy Hospital Ardmore does contain a chapel and that Catholic Mass is celebrated there weekly. Defs.' Reply at 7; Defs.' Reply Ex. 1 (Doc. No. 31-1) ("Second Bryson Decl.") ¶¶ 3-5. In support, Defendants provide photographs of the chapel located inside Mercy Hospital Ardmore. *See* Second Bryson Decl. at 4-6.

[6] The additional facts Plaintiff deemed material, *see* Pl.'s Resp. at 7-13, to which Defendants largely admit, *see* Defs.' Reply at 7-10, primarily refer to Plaintiff's personal

## IV. *Plaintiff's Title VII Claims*

Under Title VII, it is unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII also proscribes employer retaliation against an employee for his or her opposition to a practice made unlawful by Title VII. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (citing 42 U.S.C. § 2000e-3(a)). Under § 2000e-1(a) of Title VII, however, religious entities are exempt from the prohibition on retaliation and discrimination on the basis of religion. *See* 42 U.S.C. § 2000e-1(a); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 329 (1987). Section 2000e-1(a) provides:

> This subchapter [i.e., Title VII, which covers both § 2000e-2(a)(1) discriminatory discharge claims and § 2000e-3(a) retaliation claims], shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a).

Because the statute does not define what constitutes a religious entity, courts have considered a variety of factors when analyzing whether an employer falls within the scope of the § 2000e-1(a) exemption. Here, both parties cite the test articulated in *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217 (3d Cir. 2007), which

---

experiences at Mercy Health Ardmore. The Court has thoroughly reviewed these undisputed facts but addresses only those "essential to the proper disposition" of Plaintiff's claims. *See Adler*, 144 F.3d at 670.

directs the weighing of "all significant religious and secular characteristics" "to determine whether the [entity's] purpose and character are primarily religious." *Id.* at 226 (alteration and internal quotation marks omitted).[7] The *LeBoon* court articulated nine factors that have been found relevant to this inquiry:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*Id.* The *LeBoon* court cautioned that "not all factors will be relevant in all cases, and the weight given each factor may vary from case to case." *Id.* at 227.[8]

The Court finds that, when analyzed in view of the *LeBoon* factors, Defendants fall within the scope of the § 2000e-1(a) exemption. *See LeBoon*, 503 F.3d at 226.

As to the first factor, it is undisputed that Defendants are not-for-profit entities. *See* Pl.'s Resp. at 15; Defs.' Mot. at 20-21; *see also* Compl. ¶¶ 3.2-3.4; Answer ¶¶ 3.2-3.4.

---

[7] Though the Tenth Circuit has not spoken on the issue, a district court within the Tenth Circuit has examined the scope of the § 2000e-1(a) exemption and applied the "primarily religious" test from *LeBoon*. *See Braun v. St. Pius X Parish*, 827 F. Supp. 2d 1312, 1317-18 (N.D. Okla. 2011); *Gonzalez v. Saint Francis Health Sys., Inc.*, No. 11-CV-0376-CVE-FHM, 2011 WL 4093824, at *2-3 (N.D. Okla. Sept. 14, 2011).

[8] The parties agree that the eighth and ninth factors are not relevant in this case. *See* Defs.' Mot. at 28-29; Pl.'s Resp. at 15.

8

Regarding the third and fourth factors (and passing over the second for the moment), it is undisputed that Defendant Mercy Health's Articles of Incorporation and Bylaws state a religious purpose and that Defendants are affiliated with the Sisters of Mercy (a religious order of the Roman Catholic Church) and Mercy Health Ministry (a health care ministry with public juridic personality). Plaintiff admits that Defendants are therefore affiliated with the Catholic Church but disputes that such affiliation is "readily apparent." Pl.'s Resp. at 16. Even if Plaintiff could establish a factual dispute on this point, it would be immaterial because evaluation of *LeBoon*'s third and fourth factors does not depend on what is readily apparent.

Regarding the fifth factor, it is undisputed the Sisters of Mercy order has representatives on the Mercy Health Board of Directors. Plaintiff admits that this Board's membership deliberately includes persons affiliated with the Catholic Church but suggests this fact is insignificant in light of the nonreligious affiliation of Mercy staff and physicians. *See* Pl.'s Resp. at 16-17. Again, Plaintiff's argument is not material to the satisfaction of the fifth *LeBoon* factor, which concerns only the participation of a religious entity in Defendants' management.

As to the sixth factor, the record reflects that Defendants hold themselves out to the public as sectarian through their display of religious symbols in their facilities and through their sectarian mission statement and values statement displayed on the Mercy public website. Plaintiff argues that Defendants primarily hold themselves out as hospitals, not religious facilities. *See id.* at 17. Such evidence does not contradict that the entities operating the hospitals publicly declared themselves to be religious in nature.

Regarding the seventh factor, Plaintiff argues that he was "never asked to pray or attend a prayer session." *Id.* Plaintiff acknowledges, however, that he was exposed to prayer at some meetings and offers no evidence that would directly contradict Defendants' evidence that other of their employees were invited to and did pray at meetings.

Returning to the second factor, Plaintiff argues—in a contention that touches on several other of the *LeBoon* factors—that Defendants cannot be considered religious entities because the "Mercy network exists for medical treatment to the public for a fee—a secular service/product." *Id.* at 15-16. Plaintiff submits that Mercy uses medical science and technology, rather than prayer and worship, to treat patients. Thus, says Plaintiff, while Defendants might claim a religious purpose, they "fail to show or explain how health care to the public involves ministry." *Id.* at 16.

Treatment of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect a religious character. It may also be motivated by purely secular notions of good will or commerce. Thus, even if the product of medical treatment is viewed separately from the motivation of the provider and deemed purely secular, that reasoning only suggests that Defendants might be something other than religious entities. Here, consideration of the summary judgment record and the other *LeBoon* factors establishes that Defendants' motivation was religious in nature. Accordingly, to the extent that the second *LeBoon* factor weighs in favor of a finding that Defendants are not religious entities, it does so minimally.

Moreover, the legislative history of Title VII illustrates that Plaintiff's emphasis on the argument that "[m]edical care is a secular product" is misplaced. As originally enacted,

Title VII's religious exemption applied only to employment decisions related to carrying out the religious organization's *religious* activities. *See Amos*, 483 U.S. at 332 n.9. In 1972, Congress "broaden[ed] the exemption to include *any* activities of religious organizations, regardless of whether those activities are religious or secular in nature." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011) (emphasis added); *see Amos*, 483 U.S. at 332 n.9. Thus, the fact that an entity may produce secular products or perform secular activities is not, alone, determinative of whether the entity qualifies for the religious exemption. *See Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1038 (N.D. Iowa 2006) ("Nor does [the plaintiff's] contention that Mercy's purpose to provide health care is 'secular' change the outcome, because it is not necessary that the activities of the organization be 'religious' activities for either the organization or the activities to be exempt."); *see also Amos*, 483 U.S. at 330-40 (holding that applying the § 2000e-1(a) exemption to "the secular nonprofit activities of religious organizations" does not violate the Establishment Clause of the First Amendment).

Upon applying the facts established through the summary judgment record to the factors set forth in *LeBoon*, the Court concludes that Defendants are religious entities within the relevant context and that Plaintiff has failed to produce evidence on which the trier of fact could reasonably determine otherwise. *See Liberty Lobby*, 477 U.S. at 252. Therefore, the Court determines as a matter of law that Defendants are exempt under § 2000e-1(a) from Plaintiff's Title VII religious discrimination and retaliation claims.

V.  *Plaintiff's OADA Claims*

Like Title VII, the OADA prohibits employer retaliation and discrimination based on religion. *See* Okla. Stat. tit. 25, § 1302(A)(1) ("It is a discriminatory practice for an employer . . . [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of . . . religion . . . ."); *id.* § 1601(1) ("It is a discriminatory practice . . . to retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the OADA][.]"); *see also id.* § 1350(B) (addressing OADA cause of action for employer retaliation). Similarly to Title VII, the OADA contains an exemption for religious entities from employment-based claims related to religion. *See id.* § 1307. The OADA also expressly allows a defending party to an employment-based action to "allege any defense that is available under Title VII of the Civil Rights Act of 1964." *Id.* § 1350(F).[9]

---

[9] Section 1307 of the OADA tracks the narrower language of Title VII's religious exemption prior to the 1972 amendment in that it exempts only the religious organization's *religious* activities, rather than *all* of its activities:

> This chapter [i.e., Okla. Stat. tit. 25, §§ 1301 et seq.] does not apply to a religious corporation, association, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by the corporation, association, or society of its religious activities.

Okla. Stat. tit. 25, § 1307 (footnote omitted). *Compare id.*, *with* 42 U.S.C. § 2000e-1(a); *see also Amos*, 483 U.S. at 332 n.9. While the OADA's religious exemption expressly applies only to the "religious activities" of the employer, the Court reads the language of title 25, section 1350(F) of the Oklahoma Statutes, *see supra*, as allowing the application

Defendants argue that they are exempt from Plaintiff's OADA religious discrimination and retaliation claims under the OADA's religious exemption provision, Okla. Stat. tit. 25, § 1307, for the same reasons that they are exempt from Plaintiff's Title VII claims under § 2000e-1(a). *See* Defs.' Mot. at 31-32. In support, Defendants cite *Gonzales v. Saint Francis Health System, Inc.*, 2011 WL 4093824. In that case, the district court cited *LeBoon* and noted that while "[t]here are no federal or state cases interpreting or applying the Oklahoma exemption for religious organizations," "[t]he Court will analyze the application of the religious exemption under [the OADA] as it would under Title VII." *Id.* at *3; *see* Defs.' Mot. at 31. Plaintiff offers no argument against the application of the *LeBoon* test to Plaintiff's OADA claims, and the Court finds such application appropriate in light of section 1350(F)'s extension of Title VII defenses to OADA claims and the substantial volume of authority expressing that OADA claims should be analyzed under the same standards as corresponding federal discrimination and retaliation claims.[10]

---

of the broader exemption of § 2000e-1(a), as amended, to OADA religious discrimination and retaliation claims.

[10] *See, e.g.*, *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017) ("The OADA is analyzed similarly to Title VII claims."); *Tilghman v. Kirby*, 662 F. App'x 598, 603-04 (10th Cir. 2016) (analyzing OADA retaliation claim under same standards as Title VII claim); *Barzellone v. City of Tulsa*, No. 99-5088, 2000 WL 339213, at *5 (10th Cir. Mar. 31, 2000) (finding that plaintiff's OADA claim failed "for the same reasons" her federal claims failed); *Payne v. WS Servs., LLC*, 216 F. Supp. 3d 1304, 1311 n.1 (W.D. Okla. 2016) ("Plaintiffs' state law discrimination claims are decided in the same manner as [their] federal claims. Under the [OADA], a defendant may assert any defense available to it under Title VII. Further, a plaintiff's OADA claim fails if her federal discrimination claims fail." (citation and internal quotation marks omitted)); *accord Bennett v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1259 (N.D. Okla. 2014); *Hamilton v. Okla. City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012); *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246-47 (N.D. Okla. 2010).

As outlined above, Plaintiff has failed to show a genuine factual dispute as to Defendants' status as a religious organization for purposes of exemption under Title VII. Because the same defense of exemption applies to Plaintiff's OADA claims, Defendants are likewise entitled to summary judgment on Plaintiff's OADA claims of religious discrimination and retaliation.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 16) is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 25th day of March, 2020.

*[signature]*
CHARLES B. GOODWIN
United States District Judge